Good morning, Your Honors, and may it please the Court, my name is Brian Perryman. I represent the appellant, American Bankers. This case is about the outsourcing of public justice for private gain. My client was Welcome to the State of California, who has private attorney general all over the place. There are private What's so novel about this? This case is exceptionally novel because it is being brought by a public prosecutor, a district attorney who is ordinarily associated with bringing criminal cases. He's asserting claims for civil penalties. What's novel about this, and what distinguishes it from other private claims under the UCL or other California consumer protection laws, is that only a public prosecutor can bring a claim for civil penalties. Well, under this statute, but there are lots of statutes where that's not the case. So I'm still not sure I understand what's wrong with the State giving authority to pursue civil penalties and putting that authority in the hands of a private attorney, since several statutes do that. Indeed, federal statutes can do that. What's wrong with that, Your Honor, is that in this case, you have to look at what the history of the UCL civil penalty and public law enforcement actions are. They have historically been treated by courts within this circuit and courts in the California State system as being, and I'll quote here, more akin to a criminal enforcement action. I don't know which other cases or statutes that the court would In what way are they different from key TAM actions that also allow a private person to seek civil penalties? Right. We addressed that in the briefs. A key TAM action, as this Court pointed out, I think it was in the Kelly case, is fundamentally different from a public law enforcement action. In what way? In the way that a private litigant is actually directing that litigation. It is not wielding In the name of the United States, so the same way this is in the name of the county. Correct. But it is not wielding direct government power as is being wielded here. Well, the claim belongs to the Federal Government. The DOJ could step in at the outset if it wanted to. Most of the proceeds would go to the Federal Government. How is this any different? Well, this is different because the proceeds are not going to state coffers. The proceeds are going to line the pockets of the prosecutor himself. Well, that's not true. Some of the proceeds would, if they win, some of the proceeds go to the county, and some of the proceeds go to the law firm that helps the county. And in the key TAM, it's exactly the same. Some of the proceeds go to the United States Government and some of them go to the private person who brought the case. I think the fact is that there are a certain class of civil actions where we don't allow. So you don't want us to allow in this instance, but you're still not telling us why this particular statute in this instance is different from other instances when we plainly do allow private parties to prosecute. Well, let me try a little bit harder, Your Honor. This is different because a UCL civil action or action for civil penalties is itself a different sort of animal. The Court has said as much in cases like Intelligender. So are you making a State law case? I mean, maybe you could say as a matter of State law that the State didn't intend civil penalties to ever allow any private involvement. But that's not a due process Federal question that we can answer. I mean, that's something you've got to take up with the California courts, right? You're starting to sound like you're saying like this isn't what the California statute meant, but you don't even have a claim in this case like that. No, Your Honor. We have a Federal due process claim. And the Federal due process claim arises from the fact that courts have said in certain classes of civil litigation, for example, the Clancy case that we cited in the briefs. In certain classes of civil litigation, there cannot be a direct pecuniary interest by the public prosecutor in the outcome of the case. What case says that? It's Clancy. Now, Clancy was not, I will admit, it was not a due process case. But it cited U.S. Supreme Court due process, and the analysis is functionally identical for these purposes. But it's – well, first of all, even if it did say that, we wouldn't be bound by it here, right? I mean, it's a California case. And even if it were for persuasive value, I don't – I think you have a hard time saying that they were reaching a due process holding when that's not what they said they were doing. Well, the Marshall v. Jericho case, it's a United States Supreme Court case, is also instructive. It's about a criminal case. It's a criminal case. That was a civil penalty. Oh, I'm sorry. You're right. But held that it wasn't a problem. Held that it wasn't a problem, but only because the public prosecutor in that action didn't have a direct pecuniary interest in the outcome of the action. His office, the Department of Labor, a division of the Department of Labor, was going to receive the civil penalties or a portion of the civil penalties. But the Court said that it didn't matter in that case because he was paid on a fixed salary. That is the opposite of what we have here. But the county attorney is paid on a fixed salary, right? The county attorney is, but his special assistant district attorneys are to recover 30 percent of the civil penalties. They have a direct pecuniary interest in the outcome of this. Which is sort of what happened in all the tobacco litigation a couple of decades ago, which was for millions and millions and possibly even billions of dollars. And I haven't heard anything about a due process violation coming out of that. Those cases are distinguishable, Your Honor. Those cases are distinguishable. But there are a lot of cases that are distinguishable. I'm having trouble figuring out what's so unique about this that the rules of contingency recovery, which apply elsewhere, can't apply here as a matter of due process. Those cases are distinguishable, Your Honor, because they deal with non-punitive measures. Those were compensatory damages, restitutionary measures. This is a pure penalty case. They are not seeking restitution in this case. They are seeking purely to penalize. And that is sufficient. That renders. But that doesn't – I mean, you're better off that they're not also seeking restitution, right? I mean, they could be seeking both, and I'm not sure how that would affect your due process claim. Well, it affects the due process claim because if the point of the lawsuit, if the primary, if not exclusive, point of the lawsuit is to punish the defendant, that gives – that makes the case sufficiently analogous to a criminal action. Now, I'm not saying that it is a criminal action, but I'm saying it is sufficiently analogous to one. But what case says that? I mean, Keetam has civil penalties, and Kelly says there's no due process problem with letting a private litigant litigate it. Well, the Marshall v. Jericho case adebrated. But in Marshall v. Jericho, the Court said there's no due process problem, and it said we're not going to figure out what the due – I mean, we don't know what the opposite would have been, right? They don't say if these things had been different, there would be a due process problem. They just say all these factors, we're looking at them, and there's no due process problem. The Marshall v. Jericho case said that there is – if there is a scheme injecting a personal interest, financial or otherwise, into the enforcement process, it may bring irrelevant or impermissible factors into the prosecutorial decision and in some context raise serious constitutional questions. Now – But then they don't tell us what that context is. And our Court has said that Keetam actions are fine. And so I'm confused how we could say something different here. Well, Keetam – the Court did not – the Marshall court did not specify the exact circumstances. And in fact, it said we not – we need not say with precision what limits there may be on financial or personal interest of one who performs a process to enforce. So there may be limits. That's all Marshall tells us. And the Marshall case doesn't require them to go on to say what the limits are. But they don't even say for sure there are limits. It's a pretty thin read. Okay, some case has to be first, but you're not giving us a lot to work with to tell us why we should be first for this kind of claim. The very next sentences in Marshall talk about why the Court decided the way it did. It said that the – there was no issue in that case because there was a fixed salary. See, but you're not saying anything different than Judge Friedland just said or that I just said for that matter. The Court recognizes maybe there could be a problem at some point. We don't have to decide that because there's certainly not a problem here. So that really doesn't tell us anything about whether there really is a due process limit applicable to a civil context with the prosecutor. Well, we can also look to legal scholarship and tradition in California. There's a world of scholarship and case law with regard to decision makers having improper influences. Judges, not nearly as much with regard to prosecutors. So the suggestion out there, but the notion that a private attorney's general is not at all novel, especially not in this jurisdiction. So I'm having some trouble figuring out what it is that's supposed to not prohibit all of that stuff, too, which seems to be pretty clearly established. And the Federal False Claims Act, which seems to be pretty clearly established in our court in Kelly, says not a problem. What is it that's so different about this one that suddenly we should reach out and decide there's a due process violation? Because, again, returning to the unique nature of the UCL civil penalty action, courts within the circuit, courts within the California state system, have said that it is more akin to a criminal enforcement action. I don't think there's any, there shouldn't be any dispute that a criminal prosecutor cannot have a direct pecuniary interest in the outcome of the case. Do we have a case that actually says they can't? Well, the California state court says exactly that, that there cannot be a contingency fee arrangement that violates due process. Do we have a Federal case saying it violates due process? I mean, you may be right, but I just don't, I'm asking if there's a case that has already held that. Yeah, the Fourth Circuit in Ganger, the Fifth Circuit in, I cannot recall the Fifth Circuit case, but there's a Fourth and Fifth Circuit cases that say that Federal prosecutors can't have direct pecuniary or other personal interests in the outcome of their prosecutions. And it's for the- Why should we care in this case anyway? I mean, there appears to be a factual finding by the district court that the district attorney himself ultimately controls litigation. And I don't see that being challenged in your brief as clearly erroneous. We did challenge it in the brief. It is the last section of the brief, Your Honor, and I would make three points about that. First, the control is not a sufficient prophylactic for any misdoings or, or selective prosecution. The last section of your brief makes the legal argument you're about to make. I don't see it making any argument that he did not have control. I mean, the section is titled, the district attorney's purported control is irrelevant to the categorical rule. So you're talking about law. I don't see anything here, and maybe you can point me to something, that challenges the district court's finding that the ultimate control was in the hands of the district attorney. I don't see anything here to establish that's clearly erroneous. Your Honor- So if that's factually the case, then why do we care? If ultimately it's the DA who doesn't have a direct factual interest, is the one who gets the shots. We care for the same reasons that we should care in a criminal action. If this case is sufficiently analogous to a criminal action, again, we would not ask if a supervising district attorney in a criminal case has adequate control over his assistant district attorney. If the district attorney has a direct personal interest or financial interest in the case, that's why we should care. What in your mind makes it analogous to a criminal case, setting aside the citations you give? Well, you don't have to take my word for it. You can take the word of the California State Supreme Court. No, no. I'm asking in your mind, why is this a battle of the heart with a criminal case? Because, Your Honor, the civil penalties here have always been analogized to criminal enforcement actions, to criminal penalties. That doesn't mean it's correct. What makes them like criminal penalties? It makes them like criminal penalties because they have the sole and exclusive purpose of punishing, has no compensatory, no remedial purpose at all. That's what the California courts have been very explicit about with respect to UCL civil penalties. Is there any power that the private law firm has as a function of working with the county that they wouldn't have if they were representing a private plaintiff, like an extra subpoena power or some extra power? Absolutely, Your Honor. What is that? They have subpoena powers that are granted to the district attorneys under the California government code. They also... Does it differ from what a private plaintiff would have in discovery in any meaningful way? It could include wire taps, for example. A special district attorney has those powers? These district attorneys are ostensibly, I mean, they're in name district attorneys. They're not...  Yes, Your Honor. I thought California prohibited wire tapping altogether. So do you got anything that says that in a civil penalty case somebody's conducted a wire tap? Yes. That's in the — it's either in the Business and Professions Code or the government code. I apologize for not remembering which. However, it is the fact that the civil penalty — the civil penalties we should return to because that is what distinguishes this from the ordinary private litigation. Well, if we don't agree with you, I'm just interested in — I mean, can you support the proposition that they have powers beyond what a civil litigant would have who's not working with the county? It would be interesting to know if you actually have a site for that. I can do that through supplemental briefing, Your Honor, if the court would like that. So what if someone was being interviewed by a special district attorney and was found to have lied in that communication, would they be subject to a crime of lying to a government officer? In the context of a — of the UCL suit? In this case, yes. I don't know the answer to that, Your Honor. Fair enough. I think it would be helpful if you have specific citations to powers that they have by working with the county that a civil — in a civil case that a civil litigant doesn't have. I didn't see that in your brief. So if you do have that, it would be interesting to see that. Do I have permission to file a Rule of 20HA letter? Yes. Thank you. I see my time is about to expire. So we'll give you two minutes for rebuttal after you're done. Thank you. Good morning, Your Honors. May it please the Court, Roland Tellis with Barron & Budd on behalf of Apelli. Let me just start by saying that if I have special powers beyond the powers I normally have in a civil case, it's news to me. It doesn't come with a cape, and it doesn't come with any special powers. Not wearing an S on your — No, no, no, Your Honor. I'd love to see somebody rip open the shirt and show us the S. Your Honors, your questions earlier were getting to the heart of the issue, which is, does this case warrant a constitutional rule? And the Supreme Court in Caperton cautioned that constitutional rules are reserved for extraordinary and rare circumstances. Well, there's no question that there's a constitutional rule with regard to judges. Of course. But even there, Your Honor, I would argue that the implication of a — of a biased judiciary raises concerns that are far greater than the ones here. But even there, it's contextual, right? The Marshall Court was a perfect example of that, where the Court would not go so far as to say that an administrative law judge who was perceived to have some institutional bias because penalties that were levied could come back to the department that employed that — But they basically said he doesn't really have the bias. I mean, they gave all these reasons why no one could even reasonably think there is a bias here, right? Right. And they said that in that context, he's more prosecutorial than he is as a judge. But what was interesting is they said, quote, the constitutional interests there are not to the same degree implicated if it's the prosecutor and not the judge who's offered the incentive. But didn't they recognize there is some constitutional interest in a prosecutorial case? So where would that lie? No question. And the Young Court is a perfect example of that. It's an ethics issue. Because constitutional rules are reserved for the, quote, outer bounds, Congress and the States are free to pass more rigid rules to address that. And that's typically done through rules of professional conduct and ethics rules. And the Young Court indicated exactly that. The dual relationship there of the private lawyer representing Louis Vuitton at the same time prosecuting individuals who were alleged to have infringed, that person owed two duties, one to the client and one to the government in prosecuting. Those are ethics violations. That doesn't rise to a constitutional level. There's nothing about this case that warrants that type of conduct. They keep labeling this quasi-criminal as if the label alone gets them somewhere. No court has ever held that a quasi-criminal action warrants a constitutional rule like the one they're seeking here. Now, what about the penalties? Does the fact that we're seeking penalties in this case change anything? And I think it's first important to understand the character of those penalties because Your Honors have addressed this in the Boeing case. The mere fact that it's penalties, here the legislature has expressly characterized them as civil in nature and they are intended to further consumer protection goals. A neutral judiciary is a significant check against any overzealous prosecution on this side of the table that might occur here. There is no allegation that the district ---- In Marshall, the Supreme Court said we do not suggest and appellants do not contend that the Due Process Clause imposes no limits on partisanship in administrative prosecutors. So you just told us that Young is really about, like, ethical rules, but the Supreme Court seems to be telling us there's something beyond ethical rules, that there is some due process limit somewhere. Well, and I think it would depend on the context, right? It's hard to come up with a categorical bar. Now, surely if a criminal prosecutor was offered a bounty for prosecuting or for obtaining felony convictions or something, you might argue that type of conduct gets closer to the extreme outer bounds, right? But a prosecutor who is paid in a department that collects penalties, not so much. Prosecutors are not entirely neutral. They're intended, they're supposed to be zealous advocates, as we all are. But the law firms here get to keep the money. So it's not just going into the fund of the county or something. They get to keep that money and buy cars with it or whatever they're going to do with it. The portion of it in furtherance of the consumer protection goals, which is what we're doing here. So how ---- I mean, what is the difference between that and the prosecutor who ---- I mean, it seems like you're willing to say a prosecutor can't get extra money for having felony convictions. So what's the difference? I think that where you have an otherwise neutral prosecutor in this case. Someone asked a question. I think it was Judge Clifton. Is there any allegation that the DA here is otherwise disinterested? Not only is there is not only are there no allegations, appellant declined the district court's invitation to allege facts to address that issue. And so if you have an otherwise neutral DA who is not alleged to have any direct financial outcome in this litigation, maintains all the discretionary control, maintains the decisions about how to settle ---- But so is the control the only difference between the prosecutor seeking the felony convictions and this civil penalty thing? Because if that's it, then maybe we have an issue of ---- I mean, at least as a general rule, we might have to look into whether there really is control. Well, I don't think the conduct here rises to a constitutional rule. But if we're down in the State law analysis of looking at Clancy and Santa Clara, I think the distinction there is where you have a government ---- a private lawyer who supplants a government lawyer's duties, that's Clancy versus one who supports. Well, I guess I don't know that we have to worry about Clancy and Santa Clara at all. I mean, so but if as a matter of due process, it sounds like you're saying you're willing to say that a felony conviction with a bounty by a prosecutor is a problem. And so I'm asking if your answer to the only difference here is that we have a prosecutor who's not going to make money who's controlling it, then that starts to put a lot of weight on control. And I'm wondering if that's your only distinction. No, my distinction is whether that conduct isn't already subject to ethical governance through State law rules. Well, what it is doesn't preclude the possibility of a due process violation. It may be ---- I mean, there are lots of things that are ethical violations. That doesn't immunize them from being due process. Sure. Well, sure. But that is ---- those aren't the facts here. They're asking for a constitutional rule simply because we are assisting D.A. Hereford in prosecuting a UCL claim. There's no allegation here that simply by virtue of ---- listen, I'm flattered that they think having me in the case is going to be worse for them. But in what way? Other than being financially ---- Well, they don't think the case would be brought otherwise. Well, that's not ---- I mean, this provides motivation to the D.A. who doesn't want to divert resources from his own office. But if somebody comes up and says, I'll do it for free and maybe the county's going to make a buck off of it, why not? Well, there's no evidence of that. Well, but I think it's ---- it doesn't take a lot of evidence to persuade me that's what's going on here. I mean, why shouldn't that be a problem? This is going to cause lawsuits to be brought that otherwise wouldn't be brought. Well, I think the amicus briefs by the city and county of San Francisco and Santa Clara show you how this partnership between private attorneys and public lawyers who remain involved in the case and in control have great benefits. Which county is ---- are you representing here? Trinity County. Where's Trinity County? It's up north near the Oregon border. What's the population of Trinity County? Fifteen thousand. Much likelihood they're going to start bringing a whole lot of lawsuits with a DA office of what size? Well, but, Your Honor, I mean, take a look at some of these examples. Opioids, I mean, that seems to be the headline of the month. There are certain small counties where events like that are particularly impacting. It doesn't have to be a Los Angeles district attorney. All I'm saying here is that it seems to me you seem to be resisting the proposition that an arrangement like this can cause lawsuits to be brought that wouldn't otherwise be brought. That seems to be too obvious to me to avoid. But you seem to be saying, no, that's not the case. Well, I mean, I represent the Trinity County DA. I pay attention to which cases are brought on behalf of which DAs in the State of California. I don't see the floodgates. Well, could the ---- I mean, I have difficulty imagining the Trinity County DA taking on the case that you've taken on here even. Your firm brings lots of resources to bear that his office doesn't have unless it's going to stop prosecuting its usual work. Right. So the concern here is that will it cause cases to be brought that otherwise wouldn't be brought? I think the answer to that is yes. Now, that's a different question whether that translates into a due process concern. But as to the first proposition, I find it hard to avoid the conclusion that, in fact, an arrangement like this will cause more cases to be brought. But cases that have to have merit, right? I mean, these guys suggest that it's simply because we're in the case that they're going to get hit with a penalty that we don't have to prove. Well, they've got to defend the case. Right. They'd rather not defend the case even if they win. I mean, the lawyers may like the idea of defending the case even if they win, but for sure their clients don't. So the question for me is, does it constitute a due process violation if it's made easier for the county to bring a lawsuit that it otherwise wouldn't bring? I don't think that raises a concrete deprivation of a liberty interest that's not conjectural or hypothetical. So even accepting my factual premise, which I'm not going to require you to say yes to, but given my factual premise, you still don't see a due process violation. I do not. Okay. I'm prepared to get into the Santa Clara Clancy spectrum, but I don't think you need to hear from me on that other than to say that, okay, very good. In that case, I thank you for your time. There's a special place in heaven reserved for lawyers who give us back time. We don't blame people whose time we take, and that's certainly been the case for Mr. Perryman. We've kept him busy and we'll probably continue to keep him busy, but there's nothing wrong with sitting down and we stop asking questions. I have two very brief points, Your Honors. First, I wanted to get back to the Key Tam issue, because I think that's weighing on Your Honors' minds. Let me allow the Kelly case itself to distinguish public prosecution from Key Tam actions. I'll quote. It is not at all clear that Key Tam relators are bound to fulfill the same type of public duty as government prosecutors. Furthermore, the fact that relators sue in the name of the United States does not mean that they wield the governmental powers and therefore owe the same type of duty to serve the public interest as government prosecutors. And isn't there a site there that lists a whole bunch of criminal enforcement powers that you say you have but he says he doesn't have and that's what your letter will be about? Well, they wield governmental powers of a variety of sorts. Yes. And we hope to show in the 28J letter that they do wield powers beyond the civil penalty power, which is, of course, again, endemic only to public prosecutors in California. And the Kelly case continues. Key Tam relators pursue their claims essentially as private plaintiffs, therefore that it did not implicate due process concerns. Key Tam actions are completely different from government prosecutions. And this is a government prosecution. And my second point. In what sense is it a government prosecution? It's brought by a prosecutor in the name of the people of the State of California. It does not seek compensatory damages. It does not seek anything remedial. But it's a civil case. No one's going to jail. It is. I mean, it's not a criminal case, right? It's not designated by California as a criminal case that has criminal implications. It has quasi-criminal implications. It has the same sorts of criminal sanctions that you would see. And, in fact, the Supreme Court has said that the imposition of civil penalties can be analogous to sentencing in a criminal case. But Key Tam has civil penalties. So we have this problem that we as a panel can't overrule Kelly. And we can't say civil penalties make you a due process problem because Kelly says that Key Tam isn't a due process problem. Well, my last point is simply that Kelly itself distinguishes these kinds of cases. Thank you, Your Honor. Thank you. Thank you. Thank you both sides for the helpful arguments. The case is submitted.
judges: Clifton, Friedland, Gleason